**Affirmed and Memorandum Opinion filed May 30, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00245-CV

## ELIJAH GRANGER, ED.D, Appellant/Cross-Appellee

### V.

## MIKE MORATH, IN HIS CAPACITY AS COMMISSIONER OF EDUCATION, Appellee/Cross-Appellant, AND LANCASTER INDEPENDENT SCHOOL DISTRICT, Appellee

**On Appeal from the 201st District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-22-000372**

## M E M O R A N D U M   O P I N I O N

In this administrative appeal arising from a school superintendent's breach of contract complaint against a school board, we consider two questions: (1) whether the Commissioner of Education has jurisdiction over an appeal filed by a superintendent who did not follow his school district's grievance process; and (2) if jurisdiction exists, whether the superintendent waived his contract complaint by failing to grieve. We conclude that although the superintendent's failure to

grieve did not deprive the Commissioner of jurisdiction, it prevented the Commissioner from reaching the merits of the case due to an inadequate record. The district court reached the same conclusions. We affirm the district court's judgment.

## Background

The Lancaster Independent School District ("LISD") employed Elijah Granger as district superintendent. On October 29, 2020, just before a school board election, the school district's board of trustees voted to extend Granger's contract for five years, the maximum extension allowed by law. *See* Tex. Educ. Code § 21.025. On November 3, 2020, the chairperson of the school board lost re-election. Six days later, before the new board member assumed office, the board voted 4-3 to offer Granger a Voluntary Severance Agreement and Release ("VSA"), which he accepted that same day.[1] The VSA provided that Granger was to be paid $2,036,567.07 as severance compensation on November 27, 2020. Under the VSA, Granger was assigned to the position of Superintendent Emeritus from November 9, 2020 until February 1, 2021. The board voted to accept Granger's resignation, effective February 1, 2021.

By the next board meeting, November 23, 2020, the newly elected board member had assumed office. At the meeting, the board voted to suspend Granger with pay. On December 15, 2020, the board voted to rescind the VSA and to propose the termination of Granger's contract. The board never voted to terminate Granger's contract because it was determined that the issue was moot. It is

---

[1] The Commissioner noted in the proceedings below, "Just why a school board would extend a superintendent's contract to the maximum allowed by law and then just 11 days later enter into a severance agreement that paid the superintendent for about five years of work is unclear and is further not reached because this case is resolved on jurisdiction and waiver, not merits."

undisputed that LISD did not make any severance payment provided for in the VSA.

Granger did not institute a grievance with the school district, despite LISD having an applicable grievance procedure. Granger instead filed a petition for review with the Commissioner of Education, claiming that LISD breached the VSA by: (1) failing to timely pay the severance compensation under the VSA; (2) suspending Granger with pay; (3) unilaterally rescinding the VSA; and (4) proposing termination of Granger's employment. The Commissioner appointed an Administrative Law Judge ("ALJ") to hear the case.

The ALJ issued a proposal for decision, disposing of Granger's claims on the basis of jurisdiction and waiver. The ALJ concluded that the actions of LISD's board were not "quasi-judicial actions," and so any review of those actions by the Commissioner would not constitute an appeal, thereby depriving the Commissioner of jurisdiction. *See* Tex. Educ. Code § 7.057(a)(2)(B) (granting Commissioner appellate jurisdiction over actions or decisions of school district board of trustees). The ALJ also concluded that Granger waived his claims by failing to file a grievance. The Commissioner adopted the ALJ's proposed decision.

Granger appealed to the district court.[2] The district court affirmed the Commissioner's decision in part and reversed in part. The court found that the Commissioner erred by concluding that he lacked jurisdiction over the case but found that the Commissioner correctly concluded that Granger waived his issues by not filing a grievance with LISD. Granger and the Commissioner both appealed the district court's judgment to the Third Court of Appeals. By order of the

---

[2] "A person aggrieved by an action of the agency or decision of the commissioner may appeal to a district court in Travis County." Tex. Educ. Code § 7.057(d).

3

Supreme Court of Texas, the appeal was transferred to this court. *See* Tex. Gov't Code § 73.001.

## Standard of Review

We generally review an order by the Commissioner of Education under the substantial-evidence standard of the Texas Administrative Procedure Act ("APA"). *See* Tex. Gov't Code § 2001.174; *Davis v. Morath*, 624 S.W.3d 215, 221 (Tex. 2021). However, the initial jurisdictional question presented here turns on the meaning of a statute and thus presents a question of law reviewed de novo. *Davis*, 624 S.W.3d at 221 (citing *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 647 (Tex. 2020)). "An agency's interpretation of a statute it enforces is entitled to serious consideration, so long as the construction is reasonable and does not conflict with the statute's language." *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017) (internal quotation marks omitted). However, statutory ambiguity is a precondition to any such "serious consideration." *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) ("It is true that courts grant deference to an agency's reasonable interpretation of a statute, but a precondition to agency deference is ambiguity; an agency's opinion cannot change plain language.") (internal quotation marks omitted). When a statute is clear and unambiguous, we apply its words according to their common meaning to give effect to every word, clause, and sentence. *Id.*

In construing a statute, we look to the plain language of the text and interpret it in light of the statute as a whole. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). "We must apply statutes as written and refrain from rewriting text that lawmakers chose." *Pruski v. Garcia*, 594 S.W.3d 322, 325 (Tex. 2020) (internal quotation marks omitted). Our primary objective when construing a statute is to determine and effectuate the legislature's intent, and the "surest guide

4

to what lawmakers intended is what they enacted." *Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843, 853 (Tex. 2012).

If we determine that the Commissioner had jurisdiction, then we proceed to review the second question—whether Granger waived his claims—under the APA's substantial-evidence standard. Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *Slay v. Tex. Comm'n on Env't Quality*, 351 S.W.3d 532, 549 (Tex. App.—Austin 2011, pet. denied). We consider the reliable and probative evidence in the record as a whole when testing an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence. *Graff Chevrolet Co. v. Tex. Motor Vehicle Bd.*, 60 S.W.3d 154, 159 (Tex. App.—Austin 2001, pet. denied); *see* Tex. Gov't Code § 2001.174(2)(E).

Under this deferential standard, we presume that the Commissioner's order is supported by substantial evidence, and an appellant bears the burden of proving otherwise. *See Dyer v. Tex. Comm'n on Env't Quality*, 646 S.W.3d 498, 514 (Tex. 2022). The burden is a heavy one—even a showing that the evidence preponderates against the agency's decision will not be enough to overcome it, if there is some reasonable basis in the record for the action taken by the agency. *Id.* We must uphold the agency's ultimate decision if the evidence "is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *Id.* (internal quotation omitted). Our ultimate concern is the reasonableness of the agency's order, not its correctness. *See Tex. Comm'n on Env't Quality v. Maverick County*, 642 S.W.3d 537, 544 (Tex. 2022). Even improper, superfluous findings will not support reversal when "an agency's decision is based on sufficient underlying findings that are supported

by substantial evidence." *Dyer*, 646 S.W.3d at 514. An "improper, but superfluous, finding does not prejudice the substantial rights of the appellant." *Id.*

## Analysis

The Commissioner appealed the part of the trial court's judgment concluding that the Commissioner has jurisdiction over Granger's case. We begin with the Commissioner's appeal. In his issue, the Commissioner contends that he lacked jurisdiction over Granger's petition because Granger did not file a grievance with the school board.

## A. Jurisdiction

The Commissioner's jurisdiction to hear Granger's appeal of LISD's decision is purported to rest on section 7.057(a) of the Education Code, which provides:

> Except as provided by Subsection (e), a person may appeal in writing to the commissioner if the person is aggrieved by:
>
> > (1) the school laws of this state; or
> >
> > (2) actions or decisions of any school district board of trustees that violate:
> >
> > > (A) the school laws of this state; or
> > >
> > > (B) a provision of a written contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

Tex. Educ. Code § 7.057(a).

According to the Commissioner, he "had long held that he lacked jurisdiction under Texas Education Code § 7.057(a)(2) if a petitioner had not properly initiated and completed a school district's grievance process." However, recent case law from the Supreme Court of Texas and the Austin Court of Appeals forecloses the Commissioner's argument.

6

In *Davis*, a group of teachers objected to the school district's method of evaluating teacher performance. *Davis*, 624 S.W.3d at 217. The teachers brought their grievances first to the school board, which denied them as untimely. *Id.* The teachers appealed to the Commissioner, who dismissed the appealed grievances, concluding that the untimely presentation to the local school board deprived him of jurisdiction. *Id.* After district court and intermediate appellate court review, the supreme court held that the Commissioner had jurisdiction to hear the teachers' appeal. *Id.* at 218. Even assuming that the grievances were untimely under the school district's rules, "nothing in [section 7.057] conditions the Commissioner's jurisdiction on the timeliness or procedural validity of the complainant's actions at the district level." *Id.* at 222. The court also noted, however, that if a party attempted to "appeal" to the Commissioner without having obtained a decision from the school district *at all*, the Commissioner might argue that such a de novo proceeding is not within the Commissioner's appellate jurisdiction because there is no local decision that the party "may appeal." *Id.* at 223 n.7. But the *Davis* court did not address this hypothetical situation. *Id.*

In *Solis*, a teacher filed a grievance regarding the nonrenewal of her contract and later filed a petition with the Commissioner. *Tex. Comm'r of Educ. v. Solis*, 562 S.W.3d 591, 594 (Tex. App.—Austin 2018, pet. denied). The Commissioner dismissed the teacher's petition for lack of jurisdiction over the appeal. *Id.* at 595. The Commissioner concluded that, because the teacher failed to raise her specific appellate arguments at the local level, she did not "exhaust her administrative remedies" and the Commissioner lacked jurisdiction. *Id.* at 595-96. The court of appeals reversed. The court noted that the Commissioner had conflated the concepts of waiver with concepts of jurisdiction and ultimately rejected the

argument that filing a complaint at the school district level was a "jurisdictional prerequisite to filing a petition for review with the Commissioner." *Id.* at 601-02.

We turn to the present dispute with these controlling precedents in mind.[3] As the supreme court noted, the legislature's grant of appellate jurisdiction to the Commissioner is "straightforward." *Davis*, 624 S.W.3d at 222. "[A] person may appeal in writing to the commissioner if the person is aggrieved by . . . actions or decisions of any school district board of trustees that violate . . . a provision of a written contract between the school district and a school district employee." Tex. Educ. Code § 7.057(a)(2)(B). Here, Granger complains that LISD violated one or more provisions of a written contract, the VSA. LISD's alleged breach of the VSA is undisputedly the result of "actions or decisions of [the] school district board of trustees." *Id.* Neither the Commissioner nor LISD disputes Granger's claim that he was "aggrieved by" these actions or decisions. *Id.* His complaints therefore fall squarely within the text of the legislature's grant of appellate jurisdiction to the Commissioner. *See Davis*, 624 S.W.3d at 222.

The Commissioner nonetheless concluded that he lacked jurisdiction over Granger's claims. Focusing on the unanswered hypothetical in *Davis*, the Commissioner determined that jurisdiction depended on what "appeal" means in section 7.057(a). After surveying historical usages of the word "appeal," the Commissioner concluded that his appellate jurisdiction stemmed only from "quasi-judicial" decisions:

> [T]here is no appeal when a school board acting in an *executive* capacity is reviewed by the Commissioner. "Appeal" is fundamentally a judicial term. When a judicial or quasi-judicial body

---

[3] *See Mitschke v. Borromeo*, 645 S.W.3d 251, 258 (Tex. 2022) ("A transferee court must follow the transferor court's jurisprudence just as it must follow a precedent of this Court."); Tex. R. App. P. 41.3.

8

considers an executive or legislative action in the first instance, it cannot be conducting an appeal. Under Texas Education Code § 7.057(a), the Commissioner only has jurisdiction over a case if a school board has taken an action or decision while acting in a quasi-judicial capacity. Otherwise, the Commissioner would not be hearing an appeal.

The Commissioner concluded that the LISD's challenged actions were not quasi-judicial because the school board was "not acting as a tribunal arbitrating the rights of adversaries in a specific case." Rather, the board's vote to rescind the VSA was an executive action, thus depriving the Commissioner of jurisdiction over Granger's case, as it was "not an appeal."

We disagree. An appeal is a "proceeding undertaken to have a decision reconsidered by a higher authority." "Appeal," Black's Law Dictionary (11th ed. 2019). By filing a petition for review with the Commissioner, Granger sought review of LISD's decisions to suspend Granger, rescind the VSA, and refuse severance payment. Nothing in section 7.057 conditions the Commissioner's jurisdiction on the judicial quality of the challenged actions at the district level, and the Commissioner is not at liberty to create such a jurisdictional qualification. *See Davis*, 624 S.W.3d at 222 ("The text of section 7.057(a) dictates the scope of the Commissioner's jurisdiction, and the agency is not at liberty to add to or subtract from the jurisdiction assigned to it.").[4] As the *Solis* court made clear, section 7.057 "does not require that the aggrieved person have participated in a hearing before the board, but only that the board have made a 'decision' or taken 'action.'" *Solis*,

_____

[4] The Commissioner argued below that allowing otherwise "would fundamentally change the workings of school boards," would limit the constitutional right of petition, and would amount to a change in the burden of proof. We need not consider these arguments, for they are better addressed to the legislature. Because section 7.057 unambiguously sets out the Commissioner's jurisdiction, we may not resort to any extratextual sources to inform our analysis. *See Pruski*, 594 S.W.3d at 325 ("We must apply statutes as written and refrain from rewriting text that lawmakers chose."); *Combs*, 401 S.W.3d at 630 ("[A]n agency's opinion cannot change plain language.").

562 S.W.3d at 598; *see also id.* at 600 n.8 ("The Commissioner's argument seems to suggest that a 'decision' must be one made in the context of resolving a dispute or complaint, presumably after a hearing. There is nothing in the text of the statute that indicates that the terms 'decision' or 'action' are so limited.").

We hold that, under the plain language of section 7.057, the Commissioner had jurisdiction over Granger's petition. We overrule the Commissioner's cross-appeal.

## B. Waiver

In Granger's first issue, he argues in part that the Commissioner (and the trial court) erred in concluding that he waived his complaint by failing to follow the school district's grievance policy.

The Education Code authorizes school boards to adopt rules and procedures for hearing complaints from teachers and others. *See* Tex. Educ. Code § 11.1511(b)(13). LISD's rules provide that a grievance or complaint form must be filed within fifteen days of the date the employee first knew, or with reasonable diligence should have known, of the decision or action giving rise to the complaint or grievance. The Commissioner noted that Granger "does not contend that [LISD] did not have a grievance policy that would apply to his claim," and no party disputes that this rule must be followed.

Failure to file a grievance may result in waiver, as both *Solis* and *Davis* noted. In *Davis*, the supreme court stated that it was undisputed that the Commissioner may consider whether a complainant's appeal should be denied on the merits due to the failure to comply with the district's grievance procedures. *Davis*, 624 S.W.3d at 223. The *Davis* court specifically noted that there was no basis in section 7.057 "to doubt that the Commissioner should deny relief to a party

10

whose appeal arises from a grievance that was not timely brought at the District level." *Id.* Similarly, in *Solis*, the court of appeals recognized that a party who fails to raise a particular complaint with a school district in accordance with an applicable local grievance policy may not have a record to present to the Commissioner that can support the complaint and that, further, the party may be found to have waived that complaint or failed to preserve it for a subsequent appeal to the Commissioner. *Solis*, 562 S.W.3d at 602.

To be sure, the *Solis* court held that the teacher in that case did not waive her claim by not filing a local grievance and thus the Commissioner should resolve the dispute on the merits. *Id.* at 604. But there, the facts were "undisputed," *id.* at 601, and the Commissioner had a sufficient record to determine the "legal question" presented. *Id.*

Here, in contrast, there are disputed fact issues regarding the issues Granger raised in his petition as well as the defensive issues raised by LISD. Because Granger did not file a grievance, there was no opportunity to develop the local record. For instance, in its brief before the Commissioner, LISD contested the validity, enforceability, and legality of the VSA. Among other things, LISD argued that Granger did not provide consideration in signing the VSA and that the board did not properly execute the VSA. LISD disputed whether the VSA on which Granger is relying is the same VSA approved by the board, asserting that "despite numerous requests from board members for a copy of the VSA before the [November 9] meeting, Granger refused to provide them with a copy and refused to allow board members to discuss the terms of the VSA in public." LISD also contended that only one board member signed the VSA and that there was no evidence that the remaining members had authorized her to sign on the board's behalf. LISD suggested that the VSA was improperly approved in the absence of

11

legal counsel, an open meeting, or public comment. All of these issues are disputed facts potentially precluding Granger's ability to recover for breach of contract. Further, although the parties could have requested the ALJ to reopen the evidence "for good cause," Granger failed to do so.[5]

Thus, the narrow exception in *Solis*, whereby a plaintiff may be able to present her complaint to the Commissioner based on undisputed facts, does not apply here. *See Gutierrez v. Laredo Indep. Sch. Dist.*, 139 S.W.3d 363, 369 (Tex. App.—San Antonio 2004, no pet.) (op. on reh'g) (because disputed fact issues existed, teacher could not prove that district breached contract as a matter of law); *Caramanian v. Houston Indep. Sch. Dist.*, 829 S.W.2d 814, 818 (Tex. App.—Houston [14th Dist.] 1992, no writ) (same).

Here, LISD's procedures required Granger to file a grievance within fifteen days of the challenged action; he failed to do so. Had Granger instituted a grievance, the board would have had the opportunity to fully consider all of his complaints about the challenged actions and to respond to those complaints with evidence and explanations for its decisions. *See Bd. of Tr. of Crystal City Indep. Sch. Dist. v. Briggs*, 486 S.W.2d 829, 831 (Tex. App.—Beaumont 1972, writ ref'd n.r.e.). As Granger chose against instituting a grievance, LISD could not and did not address the merits of any such grievance or give its reasons for taking the challenged actions. For this reason, the Commissioner is likewise precluded from reaching the merits of Granger's complaints. *See Davis*, 624 S.W.3d at 223 ("If the District was prohibited by its internal procedures from reaching the merits of

---

[5] *See* 19 Tex. Admin. Code § 157.1073(f) ("The administrative law judge may, on the motion of either party, order that the record be reopened and remanded to the district to supplement the transcript or tape recording if it appears that the party has evidence to offer that is material, relevant, or not unduly repetitious that the party, for good cause, was unable to adduce at the local hearing.").

12

the grievance, the scope of the Commissioner's appellate review is likewise limited.").

Granger argues that he was excused from following the grievance process because it would have been futile. Granger singularly relies on a case from our sister court, in which the court noted that, "[u]nder certain limited circumstances, the administrative exhaustion requirement does not apply," including when pursuing the administrative process would be futile. *Houston Indep. Sch. Dist. v. Rose*, No. 01-13-00018-CV, 2013 WL 3354724, at *3 (Tex. App.—Houston [1st Dist.] July 2, 2013, no pet.) (mem. op.). *Rose* was an exhaustion of remedies case; that is, Rose filed suit in district court before exhausting her administrative remedies. *Id.* at *2. Specifically, Rose filed an administrative grievance challenging the non-renewal decision, which the board of trustees denied; Rose then appealed the board's decision to the Commissioner. *Id.* A month before the Commissioner's decision, Rose instituted a lawsuit in district court. *Id.* Because it was undisputed that Rose did not seek judicial review of the Commissioner's decision but instead filed suit in district court, the court lacked jurisdiction over the suit. *Id.* at *3. The court of appeals also noted that Rose had not met her burden to show that the futility exception to the administrative exhaustion requirement applied to her claim. *Id.* at *3-5.

There are two problems with Granger's reliance on *Rose*. First, the exhaustion doctrine informs a trial court's jurisdiction; it does not bear on a party's waiver argument. As the *Solis* court explained, exhaustion of remedies is an administrative law doctrine designed to control the timing of *judicial* relief from adjudicative action of an agency. *Solis*, 562 S.W.3d at 597. But the exhaustion of administrative remedies doctrine does not apply equally at the administrative level:

> The Commissioner takes the position that the "exhaustion of administrative remedies" doctrine applies equally at the administrative level; that is, just as a court does not have jurisdiction over a challenge to the agency's action unless the complainant has exhausted all applicable administrative remedies, neither does the Commissioner have jurisdiction over a challenge to a school district's action unless the employee has availed herself of all applicable grievance processes. The Texas Education Code belies the Commissioner's position.

*Id.* at 597-98.

We have already concluded that the Commissioner had jurisdiction, regardless of whether Granger filed a local grievance. The question is whether, by failing to file a grievance, Granger *waived* review of the merits of his complaint. Because the exhaustion of remedies doctrine does not inform our waiver analysis, Granger's reliance on the futility exception is misplaced.

Second, the futility exception requires certainty. "An aggrieved party is also entitled to bypass the administrative process if she can show that it is *certain* that the claim will be denied on appeal." *Rose*, 2013 WL 3354724, at *4 (emphasis added); *see also McKart v. United States*, 395 U.S. 185, 193-94, 198 n.16 (1969) (observing that plaintiff is not excused from exhausting administrative remedies simply because their pursuit would have little chance of ultimate success). Here, the Commissioner stated that Granger "failed to make such a showing" of certainty, and we agree. According to Granger, any grievance would have been futile because (1) the grievance would have been heard by the same board that had taken the actions and decisions against Granger that caused him monetary harm, and (2) three of the seven members of the board had brought suit seeking to halt the severance payment. This may suggest that Granger's claim would likely have been unsuccessful, but it does not establish that the school board certainly would have denied his grievance. *See, e.g.*, *Davison v. Plano Indep. Sch. Dist.*, No. 05-

12-01308-CV, 2014 WL 1018212, at *7 (Tex. App.—Dallas Feb. 20, 2014, no pet.) (mem. op.) (rejecting teacher's futility argument where nothing in the record suggested it was "certain" her claims would be denied, had she followed the grievance process).

In sum, we conclude that substantial evidence supports the Commissioner's conclusion that "Petitioner waived his issues by not filing a grievance with Respondent." We overrule Granger's first issue on appeal. We need not address his remaining issues.

## Conclusion

We affirm the trial court's judgment.


                        */s/ Kevin Jewell*
                        Kevin Jewell
                        Justice


Panel consists of Chief Justice Christopher and Justices Wise and Jewell.